CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ALICIA VILLEGAS, DAYNA OSORNO, and
JANICE OSORNO PICHARDO, *individually*
*and on behalf of others similarly situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER** **29 U.S.C. § 216(b)** |
| JORGE'S RESTAURANT CORP.  (D/B/A CABANA JORGE), MARIA BAEZ, AUGUSTIN BAEZ, and RAFAEL RODRIGUEZ, | **ECF Case** |

*Defendants.*
-------------------------------------------------------X

Plaintiffs Alicia Villegas, Dayna Osorno, and Janice Osorno Pichardo, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge and belief, and as against Jorge's Restaurant Corp. (d/b/a Cabana Jorge), ("Defendant Corporation"), Maria Baez, Augustin Baez, and Rafael Rodriguez, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.     Plaintiffs are former employees of Defendants Jorge's Restaurant Corp. (d/b/a Cabana Jorge), Maria Baez, Augustin Baez, and Rafael Rodriguez.

2.       Defendants own, operate, or control a Dominican Restaurant, located at 689 Seneca Ave. Ridgewood, NY 11385 now located at 688 Seneca Ave, Ridgewood, NY 11385 under the name "Cabana Jorge".

3.       Upon information and belief, individual Defendants Maria Baez, Agustin Baez, and Rafael Rodriguez, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.       Plaintiffs were employed as food packers and waitresses at the restaurant located at 689 Seneca Ave. Ridgewood, NY 11385 now located at 688 Seneca Ave, Ridgewood, NY 11385.

5.       Plaintiffs were ostensibly employed as waitresses. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to packing food orders for delivery, working at the counter, making juices, cleaning tables, and taking delivery orders (hereafter the "non-tipped duties").

6.       At all times relevant to this Complaint, Plaintiffs worked for Defendants without appropriate minimum wage compensation for the hours that they worked.

7.       Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay.

8.       Upon information and belief, Defendants employed and accounted for Plaintiffs as waitresses in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.       However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

10.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as waitresses instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

11.    In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

12.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage compensation required by federal and state law and regulations.

14.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Dominican Restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

18.     Plaintiff Alicia Villegas ("Plaintiff Villegas" or "Ms. Villegas") is an adult individual residing in Queens County, New York.

19.     Plaintiff Villegas was employed by Defendants at Jorge's Restaurant and Cabana Jorge from approximately April 2021 until on or about May 12, 2022.

20.     Plaintiff Dayna Osorno ("Plaintiff Osorno" or "Ms. Osorno") is an adult individual residing in Queens County, New York.

21.     Plaintiff Osorno was employed by Defendants at Jorge's Restaurant and Cabana Jorge from approximately June 2020 until on or about May 12, 2022.

22.     Plaintiff Janice Osorno Pichardo ("Plaintiff Pichardo" or "Ms. Pichardo") is an adult individual residing in Queens County, New York.

23.     Plaintiff Pichardo was employed by Defendants at Jorge's Restaurant and Cabana Jorge from approximately May 2016 until on or about May 13, 2022.

### *Defendants*

24.     At all relevant times, Defendants own, operate, or control a Dominican Restaurant, located at 689 Seneca Ave. Ridgewood, NY 11385 now located at 688 Seneca Ave, Ridgewood, NY 11385 under the name "Cabana Jorge".

25.     Upon information and belief, Jorge's Restaurant Corp. (d/b/a Cabana Jorge) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 689 Seneca Ave. Ridgewood, NY 11385 now located at 688 Seneca Ave, Ridgewood, NY 11385.

26.     Defendant Maria Baez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Maria Baez is sued individually in her capacity as a manager of Defendant Corporation. Defendant Maria Baez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.     Defendant Augustin Baez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Augustin Baez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Augustin Baez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Rafael Rodriguez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Rafael Rodriguez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Rafael Rodriguez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants,

including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

29.     Defendants operate a Dominican Restaurant located in the Ridgewood section of Queens in New York City.

30.     Individual Defendants, Maria Baez, Augustin Baez, and Rafael Rodriguez, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, Individual Defendants Maria Baez and Augustin Baez, operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

36. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37. From May 2016 to May 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

39.     Plaintiffs are former employees of Defendants who ostensibly were employed as waitresses. However, they spent over 20% of each shift performing the non-tipped duties described above.

40.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alicia Villegas*

41.     Plaintiff Villegas was employed by Defendants from approximately April 2021 until on or about May 12, 2022.

42.     Defendants ostensibly employed Plaintiff Villegas as a food packer until she was told to work as a waitress three months after she was hired.

43.     Despite working as a waitress for the majority of her employment, Plaintiff Villegas was also required to spend a significant portion of her work day performing the non-tipped duties described above.

44.     Although Plaintiff Villegas ostensibly was worked as a waitress for the majority of her employment, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

45.     Plaintiff Villegas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.     Plaintiff Villegas's work duties required neither discretion nor independent judgment.

47.     From approximately April 2021 until on or about August 2021, Plaintiff Villegas worked from approximately 4:00 p.m. until on or about 12:00 a.m., 5 days a week (typically 40 hours per week).

48.     From approximately August 2021 until on or about October 2021, Plaintiff Villegas worked from approximately 12:00 p.m. until on or about 8:00 p.m., 5 days a week (typically 40 hours per week).

49.     From approximately November 2021 until on or about January 2022, Plaintiff Villegas worked from approximately 12:00 p.m.  until on or about 8:00 p.m., 3 days a week and from approximately 8:00 a.m. until on or about 4:00 p.m., 2 days a week (typically 40 hours per week).

50.     From approximately January 2022 until on or about May 12, 2022, Plaintiff Villegas worked from approximately 2:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 40 hours per week).

51.     From approximately May 14, 2022 until on or about May 21, 2022, Plaintiff Villegas worked from approximately 2:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 40 hours per week).

52.     Throughout her employment, Defendants paid Plaintiff Villegas her wages in cash.

53.     From approximately April 2021 until on or about May 21, 2022, Defendants paid Plaintiff Villegas $400 per week.

54.     Plaintiff Villegas was never notified by Defendants that her tips were being included as an offset for wages.

55.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Villegas's wages.

56.     Defendants withheld a portion of Plaintiff Villegas's tips; specifically, and upon information and belief, Defendants pocketed 20 % of the credit card tips.

57.     Up until approximately May 2021, Plaintiff Villegas was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

58.     On a number of occasions, Defendants required Plaintiff Villegas to sign a document, the contents of which she was not allowed to review in detail, in order to release her weekly pay.

59.     On a number of occasions, Defendants required Plaintiff Villegas to sign a document, the contents of which she was not allowed to review in detail.

60.     Defendants took improper and illegal deductions of Plaintiff Villegas's wages; specifically, Defendant would deduct pay from her if she made any mistakes. Once, Defendants deducted the amount of the bill from Plaintiff Villegas' weekly wage when customers walked out without paying.

61.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Villegas regarding overtime and wages under the FLSA and NYLL.

62.     Defendants did not provide Plaintiff Villegas an accurate statement of wages, as required by NYLL 195(3).

63.     Defendants did not give any notice to Plaintiff Villegas, in English and in Spanish (Plaintiff Villegas's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

64.     Defendants required Plaintiff Villegas to purchase "tools of the trade" with her own funds—including approximately ten aprons.

*Plaintiff Dayna Osorno*

65.     Plaintiff Osorno was employed by Defendants from approximately June 2020 until on or about May 12, 2022.

66.     Defendants ostensibly employed Plaintiff Osorno as a waitress.

67.     However, Plaintiff Osorno was also required to spend a significant portion of her work day performing the non-tipped duties described above.

68.     Although Plaintiff Osorno ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

69.     Plaintiff Osorno regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

70.     Plaintiff Osorno's work duties required neither discretion nor independent judgment.

71.     From approximately June 2020 until on or about March 2021, Plaintiff Osorno worked from approximately 8:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 40 hours per week).

72.     From approximately May 15, 2021 until on or about February 2022, Plaintiff Osorno worked from approximately 8:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 40 hours per week).

73.     From approximately February 2022 until on or about May 2022, Plaintiff Osorno worked from approximately 8:00 a.m. until on or about 4:00 p.m., 4 days a week (typically 32 hours per week).

74.     Throughout her employment, Defendants paid Plaintiff Osorno her wages in cash.

75.     From approximately June 2020 until on or about February 2021, Defendants paid Plaintiff Osorno $80 per day.

76.     During approximately March 2021, Defendants paid Plaintiff Osorno $85 per day.

77.     From approximately May 2021 until on or about September 2021, Defendants paid Plaintiff Osorno $85 per day.

78.     From approximately September 2021 until on or about May 2022, Defendants paid Plaintiff Osorno $90 per day.

79.     Defendants never granted Plaintiff Osorno any breaks or meal periods of any kind.

80.     Plaintiff Osorno was never notified by Defendants that her tips were being included as an offset for wages.

81.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Osorno's wages.

82.     Defendants withheld a portion of Plaintiff Osorno's tips; specifically, upon information and belief, Defendants pocketed 20% of the credit card tips.

83.     Up until approximately May 2021, Plaintiff Osorno was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

84.     On a number of occasions, Defendants required Plaintiff Osorno to sign a document, the contents of which she was not allowed to review in detail, in order to release her weekly pay.

85.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Osorno regarding overtime and wages under the FLSA and NYLL.

86.     Defendants did not provide Plaintiff Osorno an accurate statement of wages, as required by NYLL 195(3).

87.     Defendants did not give any notice to Plaintiff Osorno, in English and in Spanish (Plaintiff Osorno's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Janice Osorno Pichardo*

88.     Plaintiff Pichardo was employed by Defendants from approximately May 2016 until on or about May 13, 2022.

89.     Defendants ostensibly employed Plaintiff Pichardo as a waitress.

90.     However, Plaintiff Pichardo was also required to spend a significant portion of her work day performing the non-tipped duties described above.

91.     Although Plaintiff Pichardo ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

92.     Plaintiff Pichardo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

93.     Plaintiff Pichardo's work duties required neither discretion nor independent judgment.

94.     Throughout her employment with Defendants, Plaintiff Pichardo regularly worked in excess of 40 hours per week.

95.     From approximately February 2017 until on or about December 2018, Plaintiff Pichardo worked from approximately 4:00 p.m. until on or about 12:00 a.m. to 1:00 a.m., 6 days a week (typically 48 to 54 hours per week).

96.     From approximately January 2019 until February 2020, Plaintiff Pichardo worked from approximately 8:00 a.m. until on or about 4:00 p.m., 6 days a week (typically 48 hours per

week). hardo worked from approximately 8:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 40 hours per week).

97.     Throughout her employment, Defendants paid Plaintiff Pichardo her wages in cash.

98.     From approximately May 2016 until on or about December 2019, Defendants paid Plaintiff Pichardo $420 per week.

99.     From approximately January 2020 until on or about February 2020, Defendants paid Plaintiff Pichardo $480 per week.

100.    From approximately May 2020 until on or about December 2021, Defendants paid Plaintiff Pichardo $375 per week.

101.    From approximately January 2022 until on or about May 13, 2022, Defendants paid Plaintiff Pichardo $450 per week.

102.    Plaintiff Pichardo was never notified by Defendants that her tips were being included as an offset for wages.

103.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Pichardo's wages.

104.    Defendants withheld a portion of Plaintiff Pichardo's tips; specifically, Defendants pocketed Defendant's would keep 20 % of credit card tips.

105.    Up until approximately May 2021, Plaintiff Pichardo was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

106.    On a number of occasions, Defendants required Plaintiff Pichardo to sign a document, the contents of which she was not allowed to review in detail, in order to release her weekly pay.

107.    On a number of occasions, Defendants required Plaintiff Pichardo to sign a document, the contents of which she was not allowed to review in detail.

108.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pichardo regarding overtime and wages under the FLSA and NYLL.

109.    Defendants did not provide Plaintiff Pichardo an accurate statement of wages, as required by NYLL 195(3).

110.    Defendants did not give any notice to Plaintiff Pichardo, in English and in Spanish (Plaintiff Pichardo's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

111.    Defendants required Plaintiff Pichardo to purchase "tools of the trade" with her own funds—including Black shirts and black pants.

*Defendants' General Employment Practices*

112.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work without paying them appropriate minimum wage as required by federal and state laws.

113.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

114.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

115.    Defendants required Plaintiffs and all other food packers and waitresses to perform general non-tipped tasks in addition to their primary duties as food packers and waitresses.

116.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

117.      The Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

118.     These Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

119.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

120.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

121.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

122.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

123.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

124.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as food packers and waitresses for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Villegas worked.

125.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving food packers and waitresses of a portion of the tips earned during the course of employment.

126.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

127.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

128.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

129.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants paid Plaintiffs their wages in Cash.

130.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

131.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

132.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

133.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

134.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

135.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

136.     Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

137.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and willfully failing to keep records under the FLSA.

138.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

139.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

141.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

142.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

143.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

144.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

145.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

146.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

148.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

149.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

150.     Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

151.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

153.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

154.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

156.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

157.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

159.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

160.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

162.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

163.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

164.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

165.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

166.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

167.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Plaintiffs were granted lunch daily but constantly interrupted. On multiple occasions plaintiffs had to work and eat during their breaks, time which they were not paid for.

168.    The deductions made from Plaintiffs' wages were not authorized or required by law.

169.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency

of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(i)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(j)     Awarding Plaintiffs damages for the amount of unpaid minimum wage, and for any improper deductions or credits taken against wages as applicable

(k)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(n)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(o)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

February 24, 2023

CSM LEGAL, P.C

By:      /s/ Catalina Sojo, Esq.
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

May 26, 2022

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Alicia Villegas

Legal Representative / Abogado:     CSM Legal, P.C.

Signature / Firma:

Date / Fecha:              26 de Mayo 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

June 20, 2022

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Dayna Osorno

Legal Representative / Abogado:     CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                       20 de Junio del 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

June 1, 2022

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Janice Osorno Pichardo

Legal Representative / Abogado:      CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                    ***Date in Spanish***

*Certified as a minority-owned business in the State of New York*